in our first case number 124659 United States v. Graham. Shelton. Good morning. May it please the court. Spanning 221 days, the government collected Mr. Graham's location 30,000 different times, leaving no private haven unviolated. Can I ask you about exactly what, when you say location each time, that gives the cell tower to which he used a phone or received a phone call. Is that right? Not on his cell phone. Of the tower. The tower, the cell phone tower from which the cell phone he was either using to call or to receive a call pinged. Not necessarily when he was using the call. There were times that cell tower location identifies where your phone is even when you are not using it. I thought that in this case that that technology had not been developed. In other words, if he's just carrying it along with him, I understood that more recent technology, you know, sort of grows every day, that more recent technology did do that. You just carried it along with you and it tracked you every minute. To your exact location, or at least to the cell tower that was nearest you. But I thought this one was only operated by a phone call or a receipt of a phone call. That's wrong? No, I believe that's correct, Judge Motz, but that's actually a critically important factor in identifying the privacy interest here. Yeah, but I'm just interested in, is no phone calls coming in or out? This isn't a trick question, I just didn't quite understand. That is true in this case. Of course, because technology in this area does continue to evolve, it is important that the court take notice of the fact that the intrusion in privacy is getting worse, not better. Particularly with the proliferation of cell towers and the, not just the proliferation of cell towers, but the intensity and narrowness of the range. But let me make sure I understand. In this case, he only had to be either using the phone to make a call or to receive a call. Or a text, yeah. Right, so he had to actually be doing something in this case. No, he did not have to be doing something because by receiving the call or the text, he was not doing anything. Well, receiving a text, okay. I think, Your Honors, after Riley, there can be no more question about whether a privacy interest exists. The Supreme Court unanimously described metadata on cell phones, including historical cell site location information, as one of the privacies of life. Unlike Knott's, this is not simply augmented observation. This is retroactively recreating past events that were never observed and were never observable. Here, averaging one location point every 11 minutes for seven months. And like the Supreme Court noted in Riley, cell site- Is it really true that they would not be observable? I mean, somebody could have been trailing him around, hypothetically. Well, not in this context because the movements had already happened. So in Jones, theoretically, somebody could have been tracking him because it was ongoing prospectively in real time. This case, it was not. It was after the fact the government decided to go back and retrace his steps. So it was not observable. And like the Supreme Court noted in Riley and multiple other courts in the last couple of months, historical cell site location information tracks people into constitutionally protected space, which is- What's your best argument for why the third party doctrine doesn't apply here? There are many arguments for why it doesn't apply, Judge Davis. The most critical reason is because the records here are nothing at all like the records that were at issue in Smith and Miller. The level of intrusion of privacy is just categorically different. Smith turned on the fact that it was a very limited amount of information that was conveyed. And that it was the precise information that the user conveyed to the phone company. The Supreme Court in Riley described the pen registers as not a good analog for what cell phone metadata is. Have you read the dissents in Smith and- in the two- Smith and Miller? I have, Your Honor. They make almost the same arguments that you're making here. They do. I mean, it's really quite close. And you have to remember that those were back in the days when I was a young woman that these cases were decided. So things that were new then aren't- are taken for granted now. I mean, can't you make an argument that the information you got from the pen register was a deeper, wider set of information than the information you get from the ping? You actually know the time and you know the frequency of the call. You know to whom it's called, to whom you're calling. You know where it's going from. You know it's going from someone's house. And we've always said that the house is a protected area. Well, Your Honor- To some extent, if you were up here, you could make the argument that they've already decided your case. It's within that case. Well, except for the fact that the third-party doctrine didn't stop with Smith. In Ferguson, for example, and in Kwan, where information was absolutely shared with third parties that was also detailed and extensive, the Supreme Court recognized that the fact that that was conveyed to a third party did not eliminate the privacy interest. In addition, the Third Circuit described how the sharing of location information, if you can call it sharing, because it's not what the user intends to be doing, that it was not meaningfully shared in the way that bank records were in Miller or the dialed phone number was in Smith. I'm still not exactly sure. In answer to my colleague's question, you said there are many reasons. So maybe you can tick off for me the three biggest things that you think may take this case out of the third-party doctrine. Well, one I just alluded to, which was the Third Circuit's reasoning, which- Well, with all due respect to the Third Circuit and the Great Circuit, but we have to have our eye on the Supreme Court, right? Absolutely. And we don't have- that's not a Supreme Court case. And so we're looking to fit this in within the structure of the Supreme Court case. And I'm taking up your time, so you go ahead. I'll give them my government more time. Well, it is true that the Third Circuit is not the Supreme Court, but I will also note that Riley described- Riley did not take on Smith, obviously. But it did take the opportunity, nonetheless, to describe how the information was different and the fact that it was known by the cell phone service provider, potentially by being stored in the cloud, did not eliminate the privacy interest. It also described how even if there is some diminishment in privacy interest because of some level of sharing, that that diminishment did not eradicate the privacy interest. I think that Ferguson and Kwan both are important for- You don't have to give me case names, just give me the rationale is what I'm trying to search for, the reasons. The rationale is if the privacy interest is great enough, like personal medical information, or your every move for seven months, or who you are with or where you are. If the privacy interest is great enough, then the fact that a third party has some knowledge of it or is the conduit of that information that is somehow used in the scheme of it, in the way of- But as I said to you, in the pen register case, there was greater amount of information. You had less privacy out there. So I don't exactly understand what you're saying. Well, with all due respect, Judge Montz, I don't believe that it is greater information.  about a given individual than the ping on the tower. I disagree. Because nobody knows with the pen register case who is actually using the phone. It could be anybody in the house. And with a cell phone, you are able to draw the pretty clear inference of who precisely it is. You can give your cell phone to someone else, and they can be using it. Sure, you can. Well, just somebody else can use your phone in your house. They know the phone is in the house in the pen register case. I don't think that's- That's your best distinction. And just like when you are traveling someplace, and you are not actively doing anything but simply receiving a text or... You received phone calls. It was on the pen register. Even if you received phone calls that you didn't pick up, it was on the pen register. I believe the pen register... No, you go back and look at the case. I'm pretty sure about that. Fair enough, Your Honor. I will say that the Supreme Court has never required absolute secrecy. Looking at all of the cases of information that is shared since Smith and Miller, Smith and Miller are the... As I described it in my brief... The furthest reaches out of the third-party doctrine. I'm sorry. The greatest expression of the third-party doctrine. And I take your point. And so should we just say that they no longer apply in the digital age? Is that basically what you would have us do? I... I was trying to write to think... You know, Justice Breyer is always saying, how do we write this? So since we are in what is generally known as an inferior court, inferior federal court, as opposed to the Supreme Court, we would try to write it consistent with Supreme Court law. Those cases still exist. They do still exist. So that's why I'm trying to get you to give me a rationale to write around them or to distinguish them in some fashion. Certainly. And the reason would be... Although I believe that they don't... That Smith and Miller really does need to be reexamined. I understand this court is not the court to do that. But Tracy, the Florida Supreme Court, Augustine, they have not had to reject the third-party doctrine at all to recognize that the level of privacy intrusion and the active conduct by the cell phone user simply don't erase the privacy interest. That the privacy interest is so great and that the cell phone service provider... Basically, the artifact of technology and the way that the technology is used does not bring it within the same realm as Smith and Miller. In Miller in particular, where the customer was providing deposit slips and checks  that the customer intended to convey. Here, it was not any degree of intention. I know that I've used up substantially more than my time. Your Honors, if the court is interested in any of my arguments regarding good faith, I would be happy to address those on rebuttal. You've reserved some time for rebuttal. Thank you. Good morning. May it please the court. There are several issues before this court that are unique to Mr. Jordan. Is it proper for a judge to place a per se limitation on otherwise competent and relevant testimony of a defendant in order to prevent him from implicating his co-defendant? We've argued no under Rock v. Arkansas the defendant has a constitutional right to tell his version of events in his own words. Or in a pre-Roseman case where there's neither evidence nor a jury instruction concerning whether the defendant had advanced knowledge that his co-defendant had a gun, should his aiding and abetting 924C and robbery convictions be vacated? We say yes. Roseman now requires it even where, unlike here, the defendant was present when the gun was displayed. As to both defendants, whether a lay witness who could never have qualified as an expert may testify about technical matters like how cell phone towers operate and radio frequency energy wave propagation and then give a lay opinion as to the location of the defendant's phone, we say no. Compliance with Rule 702 was required because this is clearly grounded in technology and we would note that the NIST guidelines on cell phone forensics publication that we cited in our brief was mentioned by the Supreme Court in the Riley case in their discussion of cell phone technology. But I would first like to touch on some assertions that the government has made about the record with which we disagree. This is important because the government relies on these mistaken assertions to support their harmless error arguments. For example, Jordan testified that he was not the getaway driver for the McDonald's robbery, but that rather he got... Excuse me. Mr. Rene, on the Sixth Amendment question regarding the testimony of your client, what can you point to in the record to show that any error was preserved and not waived? It was made very clear, first of all, on numerous occasions, months before... Well, but I'm asking you, if you can and if you would, to point me to a page in the JA or in the record where Mr. Jordan's counsel said, Your Honor, we understand what you think we should be doing. We object. It's a violation of my client's Sixth Amendment right and Fifth Amendment right. And... Is that in the record? Well, to answer your question, Judge, first I would say that in a specific page in the record on Appendix 2295 where Jordan's counsel had actually asked the court to advise Jordan of his rights, Jordan's constitutional right to testify before the beginning of the defense case. And the court said, Yes, I will. And then on page 2295 said, You have the right to testify and I'm paraphrasing here. You're not, I'm sorry, you're not responding to the question that I'm trying to get you to focus on. Well, as I understand... I think I understand all that went before, but when did counsel stand up and say, Judge, we object to this. Counsel never said, I object to that. And in fact, as I understand the record, counsel thought what the judge had ordered was pretty much okay. That's not my reading of the record because it was clear to me that... Well, you weren't there just as I wasn't there. Well, from reading the record... Yeah, but we both read the record and I'm looking for preservation of error, not waiver. But in this particular case where it's been made clear to the court on numerous occasions already, My client is going to testify. This is what he's going to say. Then the government... I understand all of that. I understand all of that. And in a different record, yeah, there may have been a violation. But where is there evidence that this wasn't waived by counsel? First, by saying my client wants to testify, just like in Midget. Your client did testify. But he said he wanted to testify to these specific things. Yeah, but that gets into the weeds. I mean, look, do you have a 2255? Is that what this really comes down to? I mean, because your answers haven't been very satisfying. I don't think so, Judge, because just like in the Midget case where the client made it clear he wanted to testify and the court knew that the client wanted to testify. So you want to read defense counsel out of this scenario entirely? In other words, your argument, if I understand it, is that defense counsel cannot waive a defendant's right to testify. Well, certainly not... And that therefore, where a judge does what the district court did here, which is to say, well, let's keep it clean and let's not talk about these three things. And when you talk about this other thing, talk about it in this way, not in some other way, you're equating that to a waiver by counsel of the client's right to testify. Is that a fair summary of your position here? I'm not sure that I agree with that, where the court has been clearly told by counsel. But your client did, in fact, testify. And he attempted explicitly to continue to testify to the items that the court included. And his lawyer acquiesced in the district court's termination of that. But the right belongs to the client, not to the court. So you are arguing that the defense lawyer improperly waived his client's right to testify. That's what you're arguing. No, sir. I'm saying that this was imposed by the court. And even the court recognized it. And the government even used that type of language in their brief. The court said, I've imposed this upon you. And when the court read the right litany to Jordan, he said, you have the right to testify. But counsel never objected. But this is something to which the court would conduct a de novo review because it implicates a constitutional right of the accused. So there's a conflict between the Sixth Amendment right to counsel and the Sixth Amendment right informed by the Fifth Amendment right to testify in one's own defense. Is that what you're saying? I'm saying this is grounded in the Fifth Amendment and Sixth Amendment and the Fourteenth Amendment as this court has observed. And only the defendant can waive his right to testify and he was explicit that he was not. And he tried to testify to that. But even if even assuming that the right was waived, and I don't think that the record supports that, particularly when the judge advises the client. Well, if you assume the right if you assume the right was waived, that's the end of the argument, isn't it? Well, because you get into, I don't believe so when you get into the unfairness of the government's comments in closing, exploiting the absence of those statements which had been omitted based on the government's request. Commenting on that and then specifically admonishing Jordan to the jury that he should never have taken the stand and essentially insulted a judicial process by exercising his constitutional right to testify. That was all grounded in the supposed waiver of his right to testify. Okay, I really didn't want to tie up all your time on that one issue and it happened because I just wasn't grasping your answer. But you've given me your best answer. You're sort of out of time. So, I think there may be a couple of other issues you might want to mention. Would Judge Matsis leave? Well, certainly to keep in mind that this is an entirely circumstantial case. The evidence against Jordan was extremely thin and with the limitations on his testimony combined with the inappropriate comments of the prosecutor in closing, which this court in Woods and other cases have said is absolutely inappropriate especially to accuse him of arrogance for taking the stand. That so infected the entire process with unfairness that his conviction should not stand. Good morning, Your Honors. May it please the court Rod Rosenstein for the United States. Your Honors, we submit that this is an important case but not a complicated case. It is not difficult because the third party doctrine controls the outcome. It's an important case because the defendants in essence are asking the court to overturn the third party doctrine and we submit, Your Honors, that if the court were to do so it could not simply be limited to historical cell site information. I believe that the defendants could not argue in good faith that this court should simply carve out historical cell site information but preserve the third party doctrine in all other areas. In fact, counsel candidly acknowledged that she thinks the court ought to revisit both Smith and Miller which, of course, this court is not in position to do. I think it's notable Your Honor, that there were two cell phones seized in this case and one of the important facts if this court were to adopt the defendants line of argument is that the government in fact complied with Riley. Why is that? Your Honors, we obtained search warrants for both cell phones which were recovered at the scene at the time of the arrest. We didn't search those incident to arrest. We obtained search warrants for those cell phones. But the information at issue in this case was not on the cell phones. Why is that? That's because it wasn't the defendants information. This was Sprint's information. The defendants did not keep track of what cell towers they used. Sprint did. Another way of looking at it is that they didn't dictate into the telephone their cell phone what their location was but only the ping would give you an idea of that. You're jumping to the argument that the ping information is not theirs which is sort of the crux of this case. I think the third party doctrine both of those cases the cases that really sort of stand for it to the outer limits deal with the voluntariness of the disclosure of the person. Isn't all of the rub here whether in fact the defendants here were voluntarily disclosing their location to the cell phone ping tower? Let me address the issue of voluntariness but just to preface that the term ping may or may not have technological significance. Totally outdated I suppose. The point I want to make is the defendants we contend in their briefing confuse the issue of real time tracking which involves the government taking some proactive steps to collect information. That often involves what we sometimes call pinging. I do understand that the case laws made a distinction. I am not actually sure that I think real time tracking is worse than proactive tracking but I do understand that there is a distinction. Is it real time tracking? Qualitatively worse or not the point I was making your honor is that it involves government action as the government needs to contact the cell phone company or somehow reach out and what we would say is ping the phone to cause it to produce information but this case This requires government action and the government has to ask the cell phone company for the information. That's exactly right. The only government action here is asking for the records that have already been kept independently by Sprint for its own purposes and we think that's significant. Another issue the defendants and the amicus contend in their brief that somehow the government's responsible for creating this information. There's nothing in the record to support that proposition. What if the government did have a regulation that required them to gather this information? If the government required them to create the information when they wouldn't otherwise have created it. You'd still have the mechanics but to do with it what they do. That would make no difference to our argument but it would to the defendants argument because they seem to be separating the issue of the creation of the record and the maintenance of the record. In other words our position is your honor that given that technologically you need to use a cell tower to make a phone call that the use of that cell tower just as in Smith the dialing of those digits discloses that information to the phone provider whether they record it or not it's not dispositive. In fact in Smith as your honor pointed out not only are calls picked up by the pen register that were not completed but also local calls are picked up and the Smith opinion acknowledges that at the time the phone company didn't necessarily record local phone numbers it recorded long distance numbers for billing purposes but it may not have recorded local numbers but what was dispositive in Smith is that the information was necessarily disclosed and to return to your question our position is that voluntariness in this context when the government is not involved in the creation of the information, voluntariness is simply goes to the question of whether the defendant necessarily disclosed the information in the course of some voluntary activity for example. Right so did they? How did they hear? It's necessary your honor objectively in order to use the services of a phone company you need to connect to a network. So everyone in the country that has a cell phone has no reasonable expectation of privacy. Is that right? In their location. No our position your honor is they have no reasonable expectation of privacy in the tower that this phone company uses to complete the call. That's a little bit different than saying in their location and the relevance of that. How is that different? It's different in this sense a cell phone is capable of computing your actual location. In fact most modern cell phones will do that. They use what's called GPS geolocation and they can tell you precisely the longitude and latitude where you're located. You may want that for your own purposes. You may disclose that information to third parties. But that information is not what's at issue in this case. In this case what's at issue is the connection to a cell tower. Our position your honor is that just as in Smith. But every cell tower has a location. The cell tower that's correct. Yes and every cell tower has a limited range. That's exactly right. I'm not sure I get the idea. I understand the argument but it's a matter of miles versus meters versus kilometers versus precision. That's why the government wanted this. To put them in particular locations at the time of the various crimes. To as was pointed out earlier your honor. It puts the cell phone in a location you add that to other corroborating information to prove the defendant was in that location. It's one piece of evidence. But your honor it's really no different than any piece of information. If there's a robbery we often will collect surveillance video. The defendants didn't know there was a surveillance camera. That surveillance video would show you they were in that particular location. The purpose of the video wasn't to locate the defendant. It was for the store to keep track of activities for it's purposes. But the defendant by putting himself in a position where he engaged in a transaction. And our position your honor is that this is really no different than the use of a credit card or ordering from Amazon.com or anything else. What if the cell phone is given to the defendant as a gift? In other words the voluntariness necessary here is just turning it on and having it on your person or in your vehicle. No your honor. Well what's the voluntariness other than just turning it on and having it on your person? In this case the voluntariness is asking the phone company to complete a phone call for you. You need to have, you can use a smart phone without a connection to a network. You can turn it off in airplane mode and just use it as a computer. So a person who gets a cell phone as a gift, my step daughter's cell phone she's voluntarily, in other words that's all it takes. In your submission you turn it on, you have voluntarily submitted to the provider's decision to keep track of your movements. Even for unanswered phone calls. You voluntarily So you literally never have to use the phone. Well remember your honor the issue in this case has to do with completed phone calls. It's not tracking outside of phone, not completed but phone calls incoming and outgoing. Exactly. So you don't have to answer the phone for this to be implicated. But your honor for the court to rule otherwise would necessarily require you to find that the phone company is committing some sort of tort with the phone user. Just a minute. In the pen register case and the bank case they talked about them being business records and I assume you would say that this CSI CSL or whatever it is material is also a business record. It's a business record of Sprint. It's not the defendant's Right. But Sprint doesn't what the user gives to Sprint is less than what the Sprint then does with it and then gives to the government. Whereas that's not the case with the telephone or the bank records. In other words a different item is coming out than the person put in. Yes because if you just gave them this person uses the cell phone and there is the ping there without any location. If you didn't tell them the location thing, which you wouldn't have to you wouldn't have to do that. Well Your Honor if you're driving your car down the highway and you pass a camera that takes a picture of your license plate that information is now on the camera. The license plate is now on the camera. The person who goes through a toll booth for example to pay a toll with an E-ZPass a record is kept to the fact that they used the toll booth. It's really not any different in the sense that Your Honor that when you turn on your phone and you request service. You have to sign up for service. You need to sign a contract. But you have your cell phone in your home sometimes not out on a public highway. It's in your home. Just like a regular phone. Just like a regular phone. If you want to use it you need to plug it in. Now although a wireless phone connects wirelessly it's no less of a physical connection. Sprint needs to have a tower to complete that call. You can't make a call unless there's a tower and you've connected to that tower and you have a connection. So in order to complete the call you can use the smartphone all you like in airplane mode. If you want to take advantage of the wireless connection you need a provider. You need a cell tower to complete that connection. And that's the voluntariness in the context in which it's a third party collecting the information. As I say there's no allegation here that Sprint violated the defendant's rights by keeping a record of what cell tower the defendants were using. What was the import from the government's position of Congress saying you can get an order or you can get a warrant. What's that all about? Is that just stupid? Absolutely not. What is the rationale behind that? I have... We can only speculate as to what the rationale is your honor. I wouldn't want to speculate about what was in Congress's mind but I think that if you look at the statute the purpose of the statute was to create some statutory protection for information that Congress recognized had no constitutional protection and we think that's the appropriate way to deal with... When would or when has the government sought a warrant in lieu of an order? Why would any prosecutor in his or her right mind go through the additional hoops of a warrant, not that that's all that onerous, if Congress has said you can get a court order? If you're looking only for non-content information... Well, but doesn't content... Isn't that covered by Title III? Well, your honor, there's some ambiguity about the content, for example, of emails and I believe in most cases we are using warrants to get content of emails. What's inside the envelope. I see. Is that DOJ policy as of the time of this order or today? I don't know if there's a written policy, your honor. I know it's been our practice to obtain content information. We're using warrants and of course in the wake of the Eleventh Circuit's decision before it was vacated I think many offices were in fact using warrants just as a protection against that. I think that's one of the weakest parts of your case. It's hard to understand why you didn't get a warrant here. You had them in custody. You knew they were bad guys. You had all... stuff that you could put in a warrant. Keep in mind, your honor, as I said, we did get a warrant for the cell phone. I understand that. You made that very clear. But keep in mind, you know, in the course of criminal investigations, what investigators do is they go out and collect information from third parties and they don't get warrants to get information from third parties. You went and got something, so why not get the warrant, you know? One reason, your honor, is that the judges don't want us taking their time getting warrants when they're not required by law. Would it have taken more time? Pardon me? Can't you get this from a magistrate judge? You can, but... But didn't the magistrate judge give you the other thing that you got? Yes, but a warrant is a more time-consuming procedure. You're taking up their time. You think it's taking up a lot more time to get the warrant? I got a call from a magistrate judge last week in a case where we had submitted a warrant application asking why we did that. Why couldn't we just obtain an order? You said because there's this Graham case up before, sir. It might be. No, no. He actually said, now that Davis has been vacated, why would you have a need to do this? But anyway, I can't answer the question as to why Congress provided those two options. I know that our position is that when we're seeking information that's clearly third-party information, non-content. When I say non-content, what I mean is the location of the cell tower is something Sprint needed to know to complete the transaction, Your Honor. The analogy we use is UPS or Amazon or Federal Express. They need to know where you're located to deliver your package. They need to know where your phone is. My phone is in Richmond today. Yesterday it was in Maryland. How does the phone company know to send me a call to make my phone ring in Richmond? Only because my phone notifies the cell tower I'm in the neighborhood. So does this mean for every 7-Eleven robbery, every McDonald's robbery, every gas station robbery in the United States Attorney could theoretically go to a magistrate judge and say we want all the cell site location data for every phone within a two-hour period of the robbery. You probably already have algorithms in place that in about two minutes could identify the 19 phones that were talking to each other within a mile and a half of the robbery location during the robbery. I mean, is that I mean, that's not far-fetched, is it? It may sound far-fetched. If we can meet the criteria of the statute. Yeah. Well, there was a robbery. What more do you need to know? Your argument just now was this was just investigative activity, looking at pieces of I mean... The basis for the order here was that the defendants were suspected of being involved in armed robberies. Right. And your hypothetical is the same thing. And I would say yes, and thank God we can because there are cases where it's really necessary to do that. You have a kidnapping. We had one recently. A kidnapping in which we were able to identify the location of the victim and the perpetrator in part based upon cell phone tracking. And that sounds like exigent circumstances from here you had guys in custody of what appeared to be a fairly substantial, circumstantial case. And indeed, you argue harmless error here. But the issue again, Your Honor, I'm not arguing... You're arguing you really didn't even need this cell site location for this conviction. I'm not arguing that we couldn't obtain a warrant. My point is simply that if you were to make an exception of third-party doctrine, there'd be no reason to limit it to this case. And what else would it extend to? The defendants want to extend it to wipe out Let's look at it the other way. Is there any thing to which the third-party doctrine doesn't apply? What if you had in just like next year the cell phone company able to track and collect all real-time location so that they were aware of your exact location at every single moment? Is there any... Does the third-party doctrine extend to that? My answer to that is that the Fourth Amendment cases are extraordinarily fact-bound. And we don't think the Court should be speculating about... But you were just telling me we when we're making the law, we're making it for the future as well as for the case in front of us. And so we have to have an eye to that. And the Supreme Court clearly does too. So are you suggesting that there's no boundary to the third-party doctrine? Your Honor, what I'm suggesting is that to the extent that there is a boundary, this information doesn't come close to it. Well what about the hypothetical that I posed? Emerging technology, Your Honor, I think your hypothetical to some extent is reality. I mean many people permit third-party vendors to track their location. You can click that option on your phone and when you walk into Target, Target knows that you're there. That is an option that you click on your phone. Unlike this. Nobody's clicking on their phone to be tracked. But you've asked me about the hypothetical. The hypothetical, I mean if you're making a voluntary decision to turn over that information for commercial purposes to a third-party provider, then my answer would be yes, we can obtain that in the same way. And that's why you know, why do we obtain a court order in this case where, Your Honor, in most cases that are not protected by the Stored Communications Act, we don't go to the judge at all. We just issue a subpoena for the information. And where would the defendants draw that line? You look at Miller, for example. Think about all the commercial activity that becomes relevant in criminal investigation where you want to go out and subpoena somebody who may have sold a weapon to a suspect. We would have to go to a judge if there were a requirement that in order to get third-party records, you need a court order. So what I think is important to recognize here is we're talking about a situation where because of the Stored Communications Act we actually have an elevated requirement to involve judges in investigations where the baseline actually is that investigations occur, third parties are questioned and information is obtained without any judicial involvement whatsoever. So what was it that the defendants did here to voluntarily provide information that the government could access through the third-party doctrine? What did they do? What the defendants did here is they voluntarily add a phone? Voluntarily place calls using Sprint's wireless network, just like in Smith, they voluntarily place calls using the phone in their home and the third-party created the record. But again, our position, Your Honor, is that when the government's not involved in the creation of the record voluntariness is really not an issue in the Fourth Amendment analysis. I don't think you'll find that in the cases where the record was created by a third-party acting independently of the government and the government's only role is to come in after the fact. And the record, I believe, is quite clear. The defendants have talked about governmental involvement but the factual record is clear and the district court found and a Sprint witness, I believe, testified that this information is kept by Sprint for its own purposes. But you'd need a warrant to open up somebody's letter. That's exactly right. I mean, give it to the Postal Service or to FedEx. Well, Your Honor, we would but actually FedEx doesn't. FedEx is able to open envelopes if they think that there's something suspicious inside. They may open it and turn it over to the government. The defendant wouldn't have consented to that but the third party did it. And that's my point. The third-party doctrine is a bright line where if the action taken by the third party was not done at the order of the government then the defendant has no expectation of privacy. That's an action taken without any government involvement at all. So I think that's a useful analogy where what we're talking about here is simply the addressing information on the envelope. Where did FedEx pick it up? Where did FedEx deliver it? We're not interested in what was inside the envelope. Thank you very much. Judge Motz, I wish I had thought of this my first go-round but I would like to say that Caro and Kylo both were in the Supreme Court after Smith of course and those discussed tracking via electronic means into a private space and found that the fact that there was tracking outside did not matter. The third-party doctrine was still not enough to eliminate the privacy interest and of course Ferguson and Kwan and so forth and reporters committee talk about how when information is not intended for public consumption it still remains private even if the government has access to it from some other records. The scope of this information is really important. The Smith involved 13 days. This involved 7 months. It's daily all-encompassing information. It is not a situation where FedEx or ordering something on Amazon is remotely analogous. Those are Miller. Those are the situations where the user conveys specific information intending that company to use that information to provide the specific service. Here there were two orders. Yes. The first was fairly narrow. Do you agree? I do. The second much broader scope of information. Did the government use information from the second order? Absolutely it did. Can you give us some measure of how much information the government used was derived from the first order as opposed to the second? I'm sorry Judge Davis. I can't be that specific but what I would say is that given the breadth of that order it was not the second one. Didn't the witness testify that he had a more just doesn't take anything away from the breadth of the information that was gotten but I thought the government witness testified that they only used very specific portions of that second great big sweep. I'm afraid I don't remember Your Honor. I would say that the fact that that it was so broad and the first one was broad enough Well in customary Fourth Amendment analysis when a warrant is too broad and things are seized mostly what we do I think you agree is we say well let's look at the warrant and see what's clearly covered and that doesn't get excluded you only exclude what's beyond the boundary of what would have been a particular warrant Does that principle apply here? These were general warrants. These were exactly what you know the dragnet general warrants and I do not believe that the government could have gotten a warrant for any of this information because the actual applications that they submitted said essentially the defendants were arrested and had cell phones and we have some unsolved robberies which you would like to know if they were nearby They had nothing particularized about the defendants so I don't believe they could have gotten a warrant based on what they submitted. Maybe they could have crafted an application for a warrant that did include more particularized information but what they submitted here was not the equivalent Can we talk for a minute about good faith? Sure Because that's the elephant in the room isn't it? It's an elephant There are at least three reasons You think there's more than one in this case? There's a couple There are at least three reasons why good faith does not excuse this warrantless search. The first is what you have already alluded to Judge Davis that the statute is internally contradictory so it does not unlike Krull where it was a very limited statute I'm not sure it's correct to say it's contradictory Not to pick on words but Congress said you can use this procedure and you can use this procedure and the government chose the arguably less onerous procedure that doesn't contradict does it? Well, fair enough but what it does not do is it does not limit law enforcement discretion and generally in order to rely on a statute in good faith the statute itself must say this is when you can search this is what you can search for it does not convey broad prosecutorial discretion in what they could decide I know you've got two other reasons but I don't think the government's arguing here specific the government is not tying itself to Krull and the statutory authorization argument. I think it's more of a totality of the circumstances sort of a more traditional good faith analysis one factor of which is after all Congress said we could do this so I don't think you see what I'm saying so we've got that but the government's got other reasons why good faith should apply here as well so looking at the totality of the circumstances again the scope of the search seven months the 30,000 location points that's one of the circumstances another is that it was a lawyer, a prosecutor, one of the advocates in the prosecution who was the person seeking the order it was not simply a police officer making a split second decision that kind of hurts you doesn't it I don't think it does Supreme Court's never told us that we're supposed to be deterring prosecutors well the Supreme Court is saying that what it has to deter is future fourth amendment violations by law enforcement and I think that assistant U.S. attorneys are part of the law enforcement community if judges can make mistakes, why not prosecutors because the Supreme Court has specifically said that magistrate judges are not likely to be deterred because they are not parties to the action they don't have a stake in the prosecution prosecutors like police officers have a stake in the prosecution and Herring talks about the whole point of good faith being trying to deter future violations which should include other advocates there's no Supreme Court support for the notion that good faith doctrine is intended to defer prosecutors the people who the Supreme Court has talked about as being not subject to deterrence are clerks in the clerk's office and magistrate judges those are the only specific people that the Supreme Court has talked about that's a fair response the but what they have talked about is if there is a close call and somebody is either acting recklessly or grossly negligently and is making a choice that violates the fourth amendment and suppression could change that choice then the deterrent purpose of suppression is served and that is what would happen here. So now that argument does bring you into the teeth of the statute because you're asking us to deter Congress. No I'm not asking you to deter Congress because Congress said get a warrant Congress said get a warrant get an order and courts since Congress said that courts had gone all over the place you know I mean like you can tick off a scorecard of courts that had said you have to get a warrant or no you can get an order how does that help your argument? That helps because that's where the fact that it is a litigant and a lawyer comes into play because at that point that's somebody who should be charged with knowing about the constitutional debate and at least the fact that the statute  sound statute out there Thank you. Thank you very much Ms. Burnett As Judge Mott says the cases are being decided not just for today but for the future and I'm thinking back to my own very happy days as an overworked federal law clerk and I remember how helpful it was when I knew in advance whether or not a defendant was going to testify. In this particular case it's ironic because if the attorney for Mr. Jordan had not cooperated with the courts request on several occasions to tell him whether or not Jordan was going to testify and simply saying I don't know your honor and play that kind of game that the government is advocating his client would not be in this position he would have just taken the stand testified to what he wanted and then according to the government created a mistrial I don't think that's the type of Well he had a potential Bruton problem so he had to disclose it The defendant had to disclose that he was going to testify? At some point before testifying I mean before he goes on the stand the court has to figure out the Bruton issues The two of them are tied together It was clear that there wasn't going to be any Bruton issue but he didn't have to be specific exactly as to what he was going to say on the stand and in this particular case though I would also point to the fact that in the Midget case where not only did the defense counsel not object but he was the advocate for the defendant not taking the stand and the court's decision was grounded in the fact that it was the defendant who said well I do want to take the stand but I can't and in this particular case Jordan is on the stand saying I want to say these things and I explicitly said there are things here that I cannot say so when it comes down to addressing the waiver issue I really think it's important to look at the practical realities of what happened in this case and what's going to happen in future cases depending on what type of a message it sent. Furthermore I'm not sure that we're looking at the order of how all this transpired correctly somebody asserts that they're going to introduce particular evidence at trial I'm going to testify at trial says the defendant through his attorney. Objection says co-counsel. Objection says the prosecutor. Granted says the court. That doesn't mean that the defendant never raised the issue. He raised it on multiple occasions. It was raised in the Midget case. Now if you look back at the I think that Judge Davis' questions were going to was whether it was preserved because I personally read the record as the arrangement with the government and that the government agreed to and that the district court had said originally was different than the conditions under which he was required to testify but the question is whether he preserved whatever the original understanding was or not and that's what we look at the record and try to figure out and to the extent you can maybe you don't think that's valid but if you do maybe you can address that Well in the Midget case for example it was the defendant himself who preserved the issue and certainly in this case the defendant himself was just as clear that he wanted to testify not just generally but to those specific items and if the court would like I can file a supplemental letter indicating exactly what I think we've had more than enough supplemental 28Js in this case. No more Thank you very much I do want to take with Judge Matsi's indulgence 30 seconds here's a scenario that you seem not to have contemplated but perhaps you have you probably have as we all know no lawyer can knowingly put on purge a testimony and yet constitutionally and ethically a lawyer must advocate for her client's rights etc. vigorously and so on so client says to the lawyer this is what I'm going to say creates problems for the co-defendant government is concerned doesn't want to try the case twice court's already denied a severance and the court says okay protect the rights of the co-defendant while at the same time permitting the defendant who wants to testify to testify here are the things he can't say now defense lawyer standing there and knows that he or she has to say your honor I object and thereby preserve the record or acquiesces because what the judge has proposed elides a looming ethical conundrum for defense counsel you don't think that's very well I don't think that's what happened here because I don't think that's what happened here and the reason I say that is because defense counsel in that case said in a number of occasions I'm not trying to be obstructionist judge so clearly what he was trying to do is not stand in the way of the court moving forward there's absolutely no indication that he had any reason to believe that this wasn't true and the evidence with respect to your client is pretty thin it's extremely thin it's a purely circumstantial case particularly when we look at the ruling in Rosemond where you have to establish intent and advance knowledge his inability to talk about these things which were central to exactly what he was the core of his defense I think it was it was error that the government simply can't overcome especially in view of the way they exploited those absences during their closing arguments. Thank you. Thank you very much and we particularly thank you Ms. Burnett because I understand that your court appointed we very much appreciate your efforts we couldn't do this without you we will come down and greet the lawyers and then go to the next case
judges: Diana Gribbon Motz, Stephanie D. Thacker, Andre M. Davis